[Civ. No. 4573. First Appellate District, Division Two.—June 16, 1923.]

## L. T. WALLENBACK, Appellant, v. LOTTIE ARNOLD, as Executrix, etc., Respondent.

[1] CONTRACTS — PERSONAL SERVICES — CONVEYANCE OF PROPERTY — FORGED INSTRUMENT—EVIDENCE—FINDINGS.—In this action to recover damages for the breach of an alleged contract between plaintiff and defendant's testator wherein the latter agreed to convey all his property to plaintiff and his wife in consideration of their agreement to take care of the testator and his wife during their lives, the findings of the trial court that the alleged contract was never signed by either the testator or his wife, and that their names were signed thereto without their knowledge, consent, or authority, that the same was as to them a fictitious, forged, and counterfeit writing, and that plaintiff and his wife did not do any of the things which by the terms of the alleged contract they were required to do, were the natural and proper ones deducible from the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

John W. Bantz for Appellant.

Maxwell McNutt for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment in favor of the defendant in an action brought against her as executrix of the last will and testament of James Beechler, deceased, to recover twenty-five thousand dollars damages for the breach of an alleged contract between plaintiff and defendant's testator.

James Beechler, during his lifetime, was a physician engaged in operating a sanitarium at Soquel, Santa Cruz County, California. The contract alleged in the complaint was one by which plaintiff and his wife agreed to take care of Dr. Beechler and his wife during their lives, and to take full charge of the sanitarium operated by the doctor, and to care for the doctor and his wife in sickness and in death,

and in consideration of these services the doctor and his wife agreed to give and convey to plaintiff and his wife all the property then owned or thereafter to be acquired by them.

[1] The trial court found, upon sharply conflicting evidence, that the alleged contract was never signed by either Dr. Beechler or his wife, and that their names were not signed thereto with their knowledge, consent, or authority, and that the alleged contract set out in the complaint was not written, dictated, or executed by or with the knowledge or consent or authority of the said James Beechler and/or Jennie Beechler, but as to them, and each of them, the same was and is a fictitious, forged, and counterfeit writing and agreement, and that the said names, James Beechler and Jennie Beechler, were signed thereto and thereon by the wife of plaintiff without the knowledge, authority, or consent of the said James Beechler and Jennie Beechler.

The trial court also found that the plaintiff and his wife did not do any of the things which by the terms of the alleged contract they were required to do.

The only argument made by the appellant upon the appeal is that the findings are not in harmony with any of the testimony in the record. The conclusive answer to this contention is found in the record, and it is only necessary to call attention to the portions of the record which support the findings; with the portions of the record in conflict therewith, we are unconcerned, under the familiar rule regarding the power of appellate courts to review questions of fact, upon which findings have been made by the trial court upon conflicting evidence.

For years prior to the date of the alleged contract, Dr. Beechler and his wife had lived in Soquel, Santa Cruz County, where he conducted the White Cross Sanitarium for the treatment of persons afflicted with asthma. He was an educated man, punctilious and exact in his business habits, rarely omitting to make entries and records of his business transactions. At the time it is alleged the contract was made Dr. Beechler was about eighty years of age. He was in possession of all his faculties and actively engaged in his business. His wife was at that time practically blind and hence unable to read or write, but able to go about unassisted.

In 1914, Mrs. Lottie Arnold, the defendant, became an employee of Dr. Beechler at the sanitarium and remained there continuously until the eighth day of March, 1919. Her relations with the Beechlers, according to her testimony and that of Mrs. Gregory, a neighbor and close friend of the Beechlers, were entirely harmonious, and she remained with them until the illness of her son necessitated her residence in San Francisco.

In the spring of 1918 plaintiff, an itinerant junk dealer, stopped at the sanitarium to be treated for an injured ankle. He remained there overnight and then left, but in the fall of that year he returned with his wife and Dr. Beechler gave them a little cottage on the place in which to live. They were not regularly employed by Dr. Beechler, but occasionally did odd jobs for which they were paid. In January, 1919, the plaintiff and his wife were given living quarters in the sanitarium, and the plaintiff worked as chore man and his wife assisted about the house. On or about February 3, 1919, Dr. Beechler ordered the plaintiff to leave the sanitarium. In consequence of this, plaintiff and his wife both left the sanitarium and went to the home of a neighbor, Mrs. Gregory, where they remained for about a week. On February 10, 1919, a patient from the sanitarium brought to Mrs. Gregory's house a note from Dr. Beechler, stating that he wished Mrs. Wallenback to return to assist with the cooking and housework. In reply to this note, Mrs. Gregory wrote to Dr. Beechler on behalf of Mrs. Wallenback, stating that Mrs. Wallenback and her husband would return if the doctor would treat Wallenback more kindly and that Mrs. Wallenback would do the cooking if she received in compensation therefor one dollar and fifty cents a day and board for herself and husband. Mr. and Mrs. Wallenback returned to the sanitarium that afternoon and Mrs. Wallenback was paid according to her own terms. She states she was paid under this arrangement only until March 8, 1919, the date of the alleged contract, but receipts bearing her signature and dated subsequently to March 8th were introduced in evidence. The weakness of this evidence lay in the fact that the year did not appear after the month and day. Mrs. Wallenback took advantage of this fact and stated that she had never received money for her services after March 8, 1919, and that the receipts

must have been for another year. However, from considerable testimony in the record, the trial court was justified in believing that Mrs. Wallenback was not working for Dr. Beechler in March, 1918, and, therefore, the receipts could have been for no other year than 1919.

As previously stated, Mrs. Arnold left the sanitarium on March 8, 1919, to return to San Francisco. Plaintiff and his wife testified that the alleged contract was signed on that afternoon between 4 and 5 o'clock. Mrs. Gregory, a neighbor, testified that she was with Mrs. Beechler when Mrs. Arnold left the house; that she remained there all afternoon and until after 5 o'clock; that she was constantly with Mrs. Beechler; that no contract was discussed or signed by Mrs. Beechler.

In the month of August, 1919, Mr. and Mrs. Wallenback left the sanitarium and went to a ranch which they owned near Boulder Creek. They testified that Mrs. Wallenback was directed by Dr. Beechler to take a vacation. Mrs. Gregory testified that they told her in July they were tired of working for others; that they had plans for making their living upon their own property and would go to it and work for themselves. In September, 1919, while the Wallenbacks were at Boulder Creek, Dr. Beechler sold his sanitarium and with his wife moved to San Francisco into a home which he had purchased there and Mrs. Arnold and her son lived with them until the death of the doctor. Mrs. Beechler died in September, 1920, and Dr. Beechler in March, 1921.

The record contains numerous incidents and circumstances which are irreconcilable with the existence of the alleged contract. Said contract, offered in evidence, is as follows:

"Soquel, Santa Cruz Co.—March 8th.

"In the year of our Lord 1919. This agreement made and entered into.

"Between Dr. James Beechler M. D. and Jennie Beechler his wife the Partys of the first part, and L. T. Wallenback and Carrie Wallenback the Partys of the second Part. Agreement to take care of the Partys of the first part during their lifetime; and take full charge of the white cross Sanitarium; and the Partys of the second part farther agrees to be good and kind and take care of both in sickness,

and in death. The partys of the first Part agrees to give and convey to the Partys of the second Part all the property he now owns or may hereafter own., all drugs and fermuals included, for their care. All wills or contracts shall be Null and coid if made through undue influence, without this contract is canceled by the Partys of the Second Part. "The partys of the second Part farther agree to give the Partys of the first Part a good buriel and Pay all debts if there be any, and they farther agree to divide the property equally with their adopted daughter Jennie Stephenson if the Partys of the first Part die within one year. If the Partys of the first Part live longer than one year the Partys of the second Part shall be the legal and lawful heirs of all the Estate of the first Partys.

> "JAMES BEECHLER, M. D.
> "JENNIE BEECHLER
> "L. T. WALLENBACK
> "CARRIE WALLENBACK."

It is asserted by the plaintiff and his wife that the foregoing document was prepared by the doctor, a man of education and business experience, and that at the doctor's request, plaintiff took it to a stenographer to be typewritten. The original draft was not produced, but the signatures were added to the typewritten copy. The errors in spelling are attributed by the appellants to the stenographer, whose name or place of business could not be recalled by Wallenback. Wallenback testified that he was unable to read or write, except to the extent of writing his name. Specimens of Mrs. Wallenback's handwriting were offered in evidence. She was asked on the witness-stand to write certain extracts read to her from the contract and she displayed the same peculiarity in the spelling of the word "parties" as is apparent in the alleged contract. This and many other illuminating similarities between the specimens of her handwriting and the signatures of Dr. Beechler and his wife to the alleged contract were pointed out by the expert witness called on behalf of defendant.

Shortly before the death of Dr. Beechler plaintiff consulted an attorney, and as a result of that conference, the attorney wrote the following letter to Dr. Beechler:

"An old gentleman by the name of Wallcnback has requested me to take up with you for settlement a claim for services rendered by him to you at Santa Cruz, all the circumstances of which I am advised you are perfectly familiar with. He advises me that you promised to pay him at said time, but that you left the locality without seeing him. This matter must be adjusted. I assume that you are aware that this matter can be taken up not only through the courts, but through the office of the labor commissioner of the State of California, so give this matter your prompt attention."

True, the writer of this letter stated upon the witness-stand that this letter was entirely his own idea; was not suggested by his client, and did not really state the claim of his client, but was sent merely to see what sort of a reply would be received from Dr. Beechler. However, we think the letter is of some significance despite this testimony.

There is also evidence that some time after the date of the alleged contract Wallenback told Mrs. Gregory that he had a contract with Dr. Beechler by which he had been given an option to purchase the sanitarium for seven thousand dollars. Wallenback also stated upon the witness-stand that he had obtained such a contract. Just why he should be interested in paying seven thousand dollars for property which the doctor was already under contract to convey to him for his services is not made clear to us.

After the Beechlers moved to San Francisco, in September, 1919, no attempt was made by plaintiff and his wife to communicate with them, nor to care for them, nor to render any service whatsoever. Mrs. Wallenback stated that they learned of the death of Mrs. Beechler from a friend in Oakland, and that notice of the death of the doctor came to her and to her husband through the newspapers.

It seems to us that the findings of the trial court are the natural and proper ones deducible from the evidence and the judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.